UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Bankruptcy No. 18-81032 |
| Brian and Jodi Colberg and | ) | (Jointly Administered) |
| Colberg Trucking, LLC (case 18-81064) | ) | Chapter 12 |
| | ) | |
| Debtors. | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

Before the court are the final applications for the approval of the fees and expenses of the Debtors' counsel in these jointly administered cases. For the reasons discussed below, certain objections raised by the Chapter 12 Trustee are sustained and the applications will be granted in part and denied in part.

## PROCEDURAL BACKGROUND AND FACTS

Brian and Jodi Colberg are farmers residing in Stephenson County, Illinois. They raise grain crops on approximately 1,480 acres of rented farmland. In addition, they are the sole principals of Colberg Trucking LLC, a company principally engaged in the business of hauling grain. Flooding in 2017 submerged their crops and their farming income, leaving the Colbergs unable to pay their debts as they came due. On May 8, 2018, Brian and Jodi filed for relief under Chapter 12 of the Bankruptcy Code. The company filed its voluntary petition the following week. On motions of the Debtors the two cases are jointly administered pursuant to FED. R. BANKR. P. 1015(b). The court subsequently approved the Debtors' applications to employ Steinhilber Swanson LLP as their counsel in both cases *nunc pro tunc.*

The Debtors' plan was amended twice before ultimately being confirmed without objection on November 14, 2018. Between the petition date and confirmation, the court heard the Debtors' uncontested motions to employ counsel and to jointly administer the two cases. In addition, it heard two motions to assume executory contracts, a motion to approve post-petition financing, a motion to extend the time to object to dischargeability of debt and four objections to claims – all of which were

contested. Although objections and responses were raised in most of the contested matters, none required an evidentiary hearing and were instead resolved by withdrawal or agreed orders. In addition to administrative and other post-petition expenses, the confirmed plan provides for payment in full of $21,104.06 in priority tax claims over 36 months, payment in full of a $700,809.18 secured claim over 38 months, and payment of 10% of allowed secured claims totaling $219,871.33 over a period of 24 months.

The individual Debtors' fee application, filed December 5, 2018, seeks compensation for 49.70 hours of work for a partner billing at $475/hr., 144.80 hours for a second partner ($395/hr.), 6.25 hours for a third partner ($300/hr.), 37.10 hours for an associate ($275/hr.), 77.80 hours for a paralegal ($160/hr.), and 22.10 hours for attorney Randy Pflum ($250/hr.).[1] Attached to the application is an itemization of this time covering the period from May 8, 2018 through December 5, 2018. The application also seeks $973.33 in costs, attaching an itemization of expenses incurred between June 4, 2018 and October 26, 2018.[2] The Colberg Trucking fee application, filed the same day, seeks compensation totaling $6,571.00 for work performed between May 14, 2018 and December 5, 2018. These fees consist of 7.10 hours of work for a partner billing at $395/hr., 0.80 hours for a second partner ($300/hr.), 5.90 hours for the associate[3] ($275/hr.) and 11.90 hours for the paralegal ($160/hr.). The two applications in these jointly administered cases request authorization to pay a total of $117,340.33 in fees and expenses.

The Chapter 12 Trustee objects to the fee application submitted in the individuals' case. She alleges that certain itemized entries have insufficient detail or duplicate other entries, that certain work involved routine clerical tasks that should not be billed, and that certain itemizations are vague or include impermissible block billing. The Trustee further objects to various time entries and fees as being

---

[1] Mr. Pflum is listed as a "Partner" in Exhibit C to the individual Debtors' fee application but was not listed in the description of professionals in the original application to employ.
[2] An entry for mileage on "7/12/2017" appears to be a typographical error and appears intended to refer to a court hearing on July 12, 2018.
[3] But he is identified as a "Partner" in Exhibit C to the Colberg Trucking fee application.

excessive, namely: time spent preparing and reviewing certain amended schedules; a portion of the time spent preparing a motion for post-petition financing; the charges of two attorneys attending certain hearings, billing full hourly rates for travel; and time spent preparing the fee application. The Chapter 12 Trustee also objects to fees charged for a partner's appearance at the October 25, 2018 hearing on short notice purportedly over the Trustee's objection. (*See* ECF Nos. 123, 124, and 125.)[4] The Debtors responded to the Trustee's objection at the hearing held on the application. During this hearing, the Trustee was given the opportunity to question the Debtors' counsel regarding the application and related detail.

For the reasons discussed herein, in the individual Chapter 12 bankruptcy the court will approve attorneys' fees of $94,513.75 together with expenses of $943.33. In addition, the court will approve attorneys' fees of $6,274.75 in the Colberg Trucking case.

## DISCUSSION

An applicant has "the burden to prove that it was entitled to the fees and expenses identified in its application." *Matter of Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994). Steinhilber Swanson LLP was employed as counsel for the estate under Section 327. Section 330(a)(1) authorizes: "(A) reasonable compensation for actual, necessary services rendered by [such attorneys]; and (B) reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1).

The Supreme Court has emphasized that Section 330(a)(1) allows only "reasonable compensation only for *actual, necessary services rendered*." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2165 (2015) (internal quotations omitted) (emphasis in original). "Even after the passage of 11 U.S.C. § 330(a)(1), bankruptcy is not intended to be a feast for lawyers." *Matter of Taxman Clothing Co.*, 49 F.3d 310, 316 (7th Cir. 1995). The Bankruptcy Code expressly authorizes the court to "award compensation that is less than the amount of compensation that is requested" either *sua sponte* or upon motion of the U.S. trustee, the case trustee, or any other

---

[4] Unless context suggests otherwise, citations to the docket refer to the lead case.

party in interest. 11 U.S.C. § 330(a)(2). Section 330 also expressly proscribes compensation for an "unnecessary duplication of services" or "services that were not … reasonably likely to benefit the debtor's estate[] or … necessary to the administration of the case." 11 U.S.C. §330(a)(4)(A). Since this is a Chapter 12 case, the court may also allow compensation "for representing the interests of the debtor in connection with the bankruptcy case."[5] 11 U.S.C. § 330(a)(4)(B). *See also In re Rhoads*, No. 14BK17886, 2018 WL 6841357, at *1 (Bankr. N.D. Ill. Dec. 6, 2018) (denying fees for work that was neither "benefi[cial] to the estate [n]or … necessary to the administration of the case"). But the Code requires compensation to be "reasonable" and states that reasonableness is "based upon the benefit and necessity of such service to the debtor as well as other factors set forth in section 330." *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (quoting from the statute) (internal quotations omitted). The statute also makes clear that any "compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6).

The court is authorized to order the cancelation or disgorgement of any compensation received or to be received by the attorneys for debtors to the extent such compensation "exceeds the reasonable value of any" services rendered or to be rendered in connection with the case. 11 U.S.C. § 329(b). "Once a question has been raised about the reasonableness of the attorney's fee under section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable." *Matter of Geraci*, 138 F.3d 314, 318 (7th Cir. 1998) (citing authority). The court "must determine the reasonable value of the services provided by the debtor's attorney after considering the surrounding facts and circumstances, including the customary fee in comparable cases." *Id.* at 320.

---

[5] But only for Chapter 12 cases "in which the debtor is an individual" – so with respect to the Colberg Trucking fee application, the services still must have benefited the estate or have been necessary to the administration of the case. *See* 11 U.S.C. § 330(a)(4)(B).

Litigation can involve risk, and reasonableness should not be determined based on results after the fact.[6] But at the same time, reasonableness requires that an attorney representing the debtor or the estate "consider the potential for recovery and balance the efforts required against the results that might be achieved." *Taxman*, 49 F.3d at 316 (citation omitted). The Bankruptcy Code, as amended in 1994 and 2005, specifically sets forth a non-exclusive set of six factors to consider in the determination of reasonableness:

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

In addition to the issue of reasonableness itself, the rules require the applicant to provide sufficient information for the court to determine reasonableness. Under the terms of FED. R. BANKR. P. 2016 an application for compensation or reimbursement must include "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Our local rules require that the application contain "a detailed statement of the applicant's services for which compensation is sought" (Local Rule 5082-1(A)); a narrative summary further detailing the activities of the applicant, the compensation requested and the charges and expenses for which reimbursement is sought (Local Rule 5082-1(B)); and a detailed itemization of time (Local Rule 5082-1(C)). The local rule is explicit:

---

[6] *See, e.g., In re Woerner*, 783 F.3d 266, 276 (5th Cir. 2015) (concluding that "§ 330 embraces the 'reasonable at the time' standard for attorney compensation").

"Failure to comply with any part of this Rule may result in reduction of fees and expenses allowed." Local Rule 5082-1(E).

1. **Excessive Time**

   a.   ***Amended Schedules.*** The Chapter 12 Trustee challenges fees totaling $574 for time spent amending two bankruptcy schedules. (ECF No. 140 at ¶ 7.) According to the itemization attached to the fee application, a paralegal charged a total of two hours to prepare and file the individual Debtors' amended Schedule G at the rate of $160/hr. The same paralegal recorded an additional 1.3 hours the following month to prepare an amended Schedule B. A partner charged 0.4 hours at a rate of $395 per hour for work on this amended Schedule B. Characterizing the activity as "strictly administrative" and the fees sought as "unreasonably high" and "simple tasks" the Trustee argues these amounts are unreasonable. Debtors' counsel responds by contending that the time charged did not involve mere "data entry," but rather reflected reasonable and necessary work to "make sure" the information contained in the amended schedules was correct.

   The court agrees that the time charged here is unreasonably high and has not been shown to be beneficial to the estate. The activity on Schedule G consisted of adding entries to identify three land leases and to then copy the named entities onto the creditor matrix and complete a routine certificate of service and change of address form. (*See generally* ECF No. 106.) The Debtors fail to show that much of the work consisted of anything more than simply cutting and pasting addresses from one form onto another. There is no suggestion that any investigation or research was necessary for any of this. Nothing else was changed.

   Similarly, the amendment to Schedule B appears to have been simple, adding only brief descriptions of two third party claims (for a corn seed class action claim pending in the District of Kansas and a statement that they have USDA FSA claims for the 2017 crop year) and disclosing an interest in a grain cooperative, Pearl City Elevators, Inc. (*See generally* ECF No. 122.) To be sure, at least some of the time spent appears to have been reasonable, such as time spent by the paraprofessional contacting the client for information on the class action and tractor titles. But the

court is concerned by the repeated charges for "consult[ing] local rule" (twice) and the extensive amount of time charged for preparation of form notices, reflecting a heavy-handed approach for work that has not been shown to be more than routine and largely clerical. Nor has the applicant demonstrated the reasonableness of the partner's time charged here. Her entry simply states: "prepare amended Schedule B for filing with the court"—even though it is apparent that paralegal communicated with the client about this and corrected the schedule. Debtors' counsel argues that having the paraprofessional perform the bulk of the work on the matter resulted in cost savings but that the partner still needed to review her work. That is true enough, but given the minor extent of the changes, the applicant has not demonstrated that more than a cursory review was necessary. For example, the additions to Schedule B did not even include any values, listing instead only "unknown."

Therefore, here the court will disallow 1.3 hours of the paralegal's time and 0.2 hours of the partner's time spent on the amended schedules for a total of $287.

      *b.*    ***Post-petition Financing Motion.*** The Chapter 12 Trustee also takes issue with more than 17 hours charged in connection with post-petition financing matters. In her objection, the Trustee argues that "an inordinate amount of time" was billed to the Motion for Post-Petition Financing, identifying individual time entries from May 9 to July 17, 2018, totaling 17.1 hours for total fees of $5,979.[7] (ECF No. 140 at ¶ 8.) We note that the Trustee here challenges only a portion of the charged work attributed to DIP financing, cash collateral and adequate protection issues.

During the fee application hearing, the Debtors' counsel suggested these issues were difficult and central to the case and necessary for the continuation of the uninterrupted farming operations and ultimately securing confirmation of the Debtors' plan. She explained that the first, more experienced partner largely handled difficult debtor-in-possession financing issues early in the case, while she later

---

[7] During argument on the application, the Debtors' counsel argued that this disputed time totaled 17.6 hours for a total value of $6,216.50. Further review of the application discloses that the summary values presented by the Debtors' counsel during argument do not jibe with the detail contained in the supporting documents.

stepped in because of her familiarity with the Debtors' changing budget situation and landlord issues.[8] Counsel further offered that the nature and amount of this professional work is "typical" for the situation presented. The Trustee appeared to be satisfied with these purported justifications, stating at the end of the hearing that she did "not have any questions or arguments" regarding the post-petition financing charges. The court accepts that this aspect of the case was critical and that the attorneys' work here benefitted the estate. It will not take issue with the allocation of time spent by partners, associates, and paralegals—even though partner time appears somewhat heavy, given the position taken by the Trustee at the hearing. Accordingly, we will allow these fees.

    *c.*    ***Fee Application.*** The Trustee further objects to counsel's billings for the preparation of its fee application. The Trustee does not identify any particular entry related to this activity as unreasonable or deficient, nor does she suggest to us what would be usual and customary charges under the circumstances. Rather, she takes issue only with the fact that "almost 9 hours were billed."[9] (ECF No. 140 at ¶ 15.)

    While such charges in a Chapter 12 case gives us pause, we find that the Debtors' attorneys have made sufficient showing in support of these charges and the amount billed. Fees for time spent preparing a fee application, so long as reasonable and necessary, are contemplated by the statute. 11 U.S.C. § 330(a)(6). Proper itemization gives the court and interested parties information they need to determine whether fees are appropriate. *See In re Chas. A. Stevens & Co.*, 88-B-09575, 1991 WL 17787, at *5 (Bankr. N.D. Ill. Feb. 1, 1991) (allowing fees for the "time expended on the preparation of the fee application [i]s a *quid pro quo* for reviewing time sheets and exercising billing judgment").

    The time spent preparing the fee application in the individual Debtors' case was duly itemized and reasonably allocated. Nearly 75% of the activity was charged by the associate and paralegal without apparent overlap, duplication, or unnecessary

---

[8] We note that the Debtors rent from multiple owners rather than own the acreage they cultivate.
[9] We note that the Debtors' counsel billed $2,614.50 for 11.4 hours of professional and paraprofessional time in preparing the fee application in the individual Debtors' case.

work recorded. While the final submission is not problem-free, the overall application meets the requirements of the rules. We further note that the $2,614.50 requested for this work represents less than three percent of the total fees allowed; well within the range typically allowed for the preparation of a fee application. *See In re Spanjer Bros., Inc.*, 203 B.R. 85, 93 (Bankr. N.D. Ill. 1996). Accordingly, the Trustee's objection here is overruled, and the amount requested will be allowed as reasonable.

### 2. Duplication of Services and Unsupported Time.

    *a.*    *Court Appearances.* Two of the Debtors' attorneys, both partners, billed time for in-court appearances at hearings held on May 31 and June 21, 2018. For this they billed more than $11,348 for travel, time in court, and meetings. The Trustee objects, arguing that the matters heard "were not extraordinary and did not require the presentation of two attorneys given the experience each of the attorneys has with Chapter 12 matters." (ECF No. 140 at ¶ 9.) We agree.

    This court has long recognized that "only one attorney ordinarily will be compensated in court appearances." *In re Chicago Lutheran Hosp. Ass'n.*, 89 B.R. 719, 736 (Bankr. N.D. Ill. 1988); *accord In re Chas. A. Stevens & Co..* 109 B.R. 853, 856 (Bankr. N.D. Ill. 1990) (citing cases) ("The Court will not reimburse duplicative attendance at hearings or meetings when there has been no showing of necessity for the second member to participate in the hearing or meeting"). *See also In re Wildman*, 72 B.R. 700, 710 (Bankr. N.D. Ill. 1987) ("When more than one attorney appears in court on a motion or argument or for a conference, no fee should be sought for non-participating counsel [nor may attorneys] circumvent this requirement by merely rotating or taking turns participating at a single court appearance") (internal citation omitted). Professionals who are largely passive attendees to a hearing should not be compensated unless "the application itself makes [a] showing of compelling necessity for the [other professional] to participate." *In re Stoecker*, 128 B.R. 205, 212 (Bankr. N.D. Ill. 1991) (explaining that "[h]ighly compensated, experienced professionals are required to work independently to avoid the inflationary results on fee applications attendant to duplicative services").

At issue here are the fees charged for the appearance of the two partners, one billing at an hourly rate of $395 and the other charging $475, at the May 31, 2018 hearing on the applications to employ Debtors' counsel (Bankr. No. 18-81032 at ECF. No. 13; Bankr. No. 18-81062 at ECF. No. 8) and on a creditor's emergency motion for the assumption or rejection of ten open executory grain contracts (ECF Nos. 16, 17, and 19). The more expensive partner's involvement was largely limited to introducing himself to the court. The other partner introduced her clients, spoke on behalf of the Debtors and handled the matters presented during the hearing. The May 31 hearing lasted less than an hour. Notably, the hearing on the emergency motion was continued after a short introduction at the request of the parties. The two attorneys also billed their time for the hearing held on June 21. During that hearing the court briefly heard from the parties on the motion to assume and received their status report on the Debtor's motion for post-petition financing. That hearing lasted approximately ten minutes. Most of that time involved the report on the status of the parties' negotiations. Indeed, the attorney for the movant on the grain contracts motion stated that he was participating "just to observe." Again, the attorney billing at the lesser rate did the speaking for the Debtors.

They now contend that it is reasonable for two partners billing a combined rate of $870 per hour to attend these hearings. Regarding the May 31 hearing, the attorneys argue that it "set the case in motion," "involved many objections" and was "too much for one [attorney] to handle." Further, according to counsel, "it was appropriate that Mr. Richman bring his expertise to bear" for some of the matters being raised.

We begin by noting that the two attorneys involved are experienced bankruptcy practitioners, a fact they emphasized in their Section 328 motion. The presence of both at the initial Chapter 12 hearing was neither required nor necessary for the unopposed motion to employ. Nor have they shown that grain contracts motion to be particularly complicated or contentious. There was no argument presented at

either hearing on post-petition financing.[10] The Debtors' fail to show any "compelling necessity" for two partners to attend these hearings. Not only does the record not support the argument of there being too many objections for one attorney to handle, it raises questions about the time indicated in the itemization for "represent[ing] client at hearing on application to employ and [the m]otion" to assume (first attorney, 5.5 hours) and "attend[ing] bankruptcy court hearings . . . on firm retention approval and . . . motion to compel . . .; associated meetings w/ clients and counsel" (second attorney, 4.0 hours). In addition, the second attorney's block entry does not separately indicate how much time (at $475/hr.) he spent in conference. While courts, including this court, strongly disfavor "block entries",[11] we believe the entry here adequately support a charge of 1 hours' time in lieu of more detailed proof of the actual time spent. Just the reverse is the case for the June hearing, when the first attorney indicated (and provided time entries for) reviewing objections and conferring with her clients in addition to the two hours charged that day for the hearing itself. Her senior partner charged 5 hours that day to, in his words, prepare for, travel to (and from) and appear at the hearing at which he seems to have played no noteworthy role.

Fees will be allowed only for the reasonable and necessary work performed by these professionals. We find the amount charged for two attorneys at the two hearings to be duplicative, unnecessary and unreasonable. Therefore, the first attorney will be allowed 1.5 hours for her time in court on May 31 and 0.7 hours for her preparation and appearance at the June 21 hearing.[12] As for the second partner, his fees on May 31 will be disallowed except for a reasonable amount of one hour for his listed time for conferring with counsel and clients. The total amount disallowed here is $4,784.50.

*b. Unsupported Charges.* The Trustee also challenges several entries as unnecessary or unsupported. (ECF No. 140 at ¶¶ 5, 12, and 13.) First, she points to 1.2 hours ($275/hr.) recorded by an associate on May 9, 2018 to "review local

---

[10] The motion for which was not filed until June 15, 2018.
[11] *See* discussion and case cited *infra* note 15.
[12] The fee requests for related travel are discussed separately below.

procedure and requirements for Applications to Employ (0.6); draft Proposed Order and Affidavit of Disinterestedness (0.6)." The Trustee argues this work duplicates the 1.3 hours recorded that day by the paralegal (at $160/hr.): "review and finalize application to employ, prepare notice and proposed Order; review of local court rules pertaining to same." Although the Debtors' counsel vigorously argues that there was no duplication, she fails to explain why both the associate and the paralegal had to review local procedures for what appears to be a routine matter.[13] Additionally, counsel fails to explain why it was necessary for both the paralegal and associate to spend nearly the same amount of time preparing the application. It might have been understandable for a paralegal, at a lower billing rate, to prepare a draft to be reviewed by the attorney, but the itemizations seem to show the reverse, with the attorney drafting the document and the paraprofessional performing the legal research and reviewing the motion. Accordingly, the court will disallow 50% of the fees requested here, $269.

The Trustee similarly objects to a partner's entries for June 27 and 28. The Trustee rightly notes that while the partner's billing entry for June 27 charges a total of 5.1 hours, her description accounts for only 3.3 hours work. The court will therefore disallow 1.8 hours of the time charged, totaling $711, as unsupported. Similarly, that partner's July 11 billing narrative accounts for only 0.4 hours of the 3.0 hours charged, and so that remainder of $1,027, too, will be disallowed.

Finally, the cost itemization lists two separate expenses of $30 for telephonic charges on October 18, 2018. The request for the duplicate $30 expense was acknowledged by the Debtors at the hearing and will be treated as withdrawn.

### 3. Unnecessary Extended Proceedings

On October 25, 2018, the Debtors' counsel sought to proceed with a previously scheduled confirmation hearing despite their having filed yet another amended plan

---

[13] Indeed, we are troubled for the lack of explanation why either needed to charge to file for the review of the local procedures. *See In re Wire Cloth Products, Inc.*, 130 B.R. 798, 815-16 (Bankr. N.D. Ill. 1991) (attorneys are expected to know the local standards and practices of the district).

the day before.[14] During the morning hearing the Debtors' counsel represented that the Chapter 12 Trustee had consented to going forward on the Second Amended Plan on shortened notice. The Trustee's attorney disputed the suggestion. But the Debtors' counsel on this assertion, necessitating continuing the hearing until that afternoon when the Trustee could appear. At the continued hearing, the Trustee denied any such agreement, stated that she had not received the Second Amended Plan until the day before the hearing and stood on her objection to holding the confirmation hearing on 24 hours' notice. She asserted that she had told Debtors' counsel she would not have time to review the Second Amended Plan before the October 25 hearing. We concluded from this that counsel's insistence on going forward with the hearing was, at best, an unnecessary and avoidable waste of the court's and the parties' time, and continued the hearing.

Despite this, the Debtors now request fees totaling $2,804.50 for the October 25 hearing:

> [R]epresent client at hearing on plan confirmation. [I]ncluding recess with client discussion, and research of Rule 2002 notice provision (3.5); travel to and from Rockford (3.5); exchange emails with court and client regarding hearing time change (.1); review and revise Notice of Chapter 12 Plan Confirmation Hearing (.3)

The travel time will be addressed below, and the charges relating to emails and revisions of notice are not in controversy. However, most of the remaining 3.5 hours charged are not shown to be needed or reasonable, but reflect fees charged for a wasteful exercise that the Debtors could – and should – have avoided. Accordingly, the court will only allow 0.5 hours for counsel's initial appearance before the court— a 15-minute hearing—and for reasonable time the client conference identified in that entry. The remaining 3 hours time, amounting to fees of $1,185, will be disallowed.

---

[14] Second Amended Chapter 12 Plan of Reorganization (October 24, 2018; ECF No. 125). The October 25 date had been set by the court for hearing on the Debtors' Amended Plan of Reorganization that had been filed on September 20, 2018. (Order from Hearing Held September 20, 2018; ECF No. 102.) The September 24 Order provided that "[a]ny interested party shall have twenty-one...days from service of this order to file its objection ...to the Amended Chapter 12 Plan." (*Id.*) Within the time permitted, the Chapter 12 Trustee had filed her objection to confirmation of the Amended Plan. (ECF No. 113.)

### 4. Travel Time

The Trustee also objects to the attorneys billing their full hourly rate for round-trip travel time from their offices or residences in Wisconsin, claiming it is not reasonable or customary to do so. (ECF No. 140 at ¶¶ 10, 11.) To illustrate her objection, she notes that on just one day "in travel time alone, $2,610 was billed in professional fees."[15]

The Trustee identifies the fees charged for travel by the Debtors' counsel on May 31 (3.0 hours charged by two attorneys), June 21 (in block entries by the two attorneys), June 28 (in the block entry of the attorney), July 12 (block entry), October 25 (block entry) and November 6 (same). In addition to the entries identified by the Trustee, our review of counsel's supporting materials also reveals full rates charged for travel to the September 20 confirmation hearing and for the June 18 creditors' meeting. As for the latter, the Debtors split the travel fee between the individual and the Colberg Trucking cases.

Debtors' counsel argues that it is reasonable and appropriate to charge their full hourly rate for time spent driving to and from Madison, representing this to be the customary practice of her firm which the client accepted when it hired the firm and signed its form retention agreement. Further, she contends without more that such charges may reasonably compensate the billing attorney's unavailability to work on other (presumably billable) matters while traveling on behalf of the Colbergs. In this vein she also suggests that from time-to-time actual legal work may have occurred while in the car.

The Trustee is correct that it is customary in this District to discount the billing rate for compensable travel time. *See, e.g., In re Gluth Bros. Const., Inc.*, No. 07-B-

---

[15] At the outset, we note that many of the Debtors' attorney time entries fail to properly identify and set out the time expended for travel, choosing instead to lump "travel time" in block activity narratives. Courts routinely disallow such entries. *See, e.g., In re Thomas*, Nos. CC-07-1053-PaBaK and ND 96-12129-RR, 2007 WL 7541008, at *10 (B.A.P. 9th Cir. Nov. 5, 2007) ("Lumping of services in line-item entries in fee applications is universally discouraged by bankruptcy courts, because it permits an applicant to claim compensation for rather minor tasks which, if reported separately, would not be compensable") (internal footnote omitted). We choose not to do so here where the separate time can readily be discerned.

71375, 2011 WL 4344599, at *4 (Bankr. N.D. Ill. Sept. 14, 2011); *accord In re Klarchek*, No. 10BK44866, 2015 WL 9306458, at *1 (Bankr. N.D. Ill. Dec. 16, 2015) (out of town travel customarily allowed only at half rate, and local travel not compensated at all) (citing cases). The Debtors' counsel, being longstanding members of its bar, should be familiar with this practice. The terms of their retention agreement, specifically its boilerplate statement that "[t]he time for which a client will be charged will include[] but will not be limited to[] ... travel time," does not evidence mutual understanding to pay "full freight" contrary to customary practice. Nor does this boiler-plate clause relieve counsel of her burden to establish the reasonableness of the fee. (ECF No. 13 at Ex. "A".) Finally, the Debtors neither offer proof that that the attorneys should in fact be compensated for foregone opportunities or that this time in fact included actual legal work performed. Further, their failure to so state that in their original time entries as required by our local rules precludes their raising that now. Accordingly, the Trustee's objection here, too, is sustained and counsel's travel related fees will be disallowed by an amount representing half of their ordinary billing rate. In addition, we disallow the travel fee in full relating to the unnecessary appearance of the second attorney at the June 21 hearing. Accordingly, we disallow the requested fees for travel by $7,315.

## CONCLUSION

Other than as provided above, the Trustee's remaining objections to the application in the individuals' case are overruled and the court will approve the remainder of the final fee application for the individual Debtors' Chapter 12 case. The Trustee has lodged no objection to the fee application for the Trucking case, and from its own review, the court will allow that fee application, except for the travel adjustment described above. Accordingly, for the individual Chapter 12 bankruptcy the court will approve attorneys' fees of $94,513.75 together with expenses in the amount of $943.33. In addition, the court will approve attorneys' fees in the Colberg Trucking case of $6,274.75.

A separate order will be entered concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: February 27, 2019

ENTER

Thomas M. Lynch
United States Bankruptcy Judge